UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MADGE MATTHEWS,

    Petitioner,

v.

MILLICENT WARREN,

    Respondent,

_____/

Civil No. 2:13-CV-13294
HONORABLE GERALD E. ROSEN
CHIEF UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Madge Matthews, ("Petitioner"), confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her *pro se* application, petitioner challenges her convictions for first-degree felony murder, M.C.L.A. 760.316; conspiracy to commit armed robbery, M.C.L.A. 750.157a; 750.529; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted following a jury trial in the Muskegon County Circuit Court.

The prosecution's theory was that petitioner telephoned the murder victim to set up a phony drug deal, in order to lure him to a motel where he was shot and killed by petitioner's accomplices during a failed armed robbery attempt.

Dawn Davis testified that the victim, Jeremy "Tookie" Lawrence, was at her apartment around 2 a.m. the morning of the murder. (Tr. 3/8/11, pp. 145-47). Lawrence's

1

cell phone rang several times. Lawrence answered on a speaker phone and spoke with an older African American woman who identified herself as "Madge." Davis overheard Lawrence arrange to meet this woman at a room at a motel. Davis deduced from the conversation that Lawrence had arranged a drug deal. (*Id*., pp. 152-54, 170-72).

Davis then rode with Lawrence to the motel. Along the way, Lawrence received additional telephone calls. Davis testified that they arrived at the motel at around 2:30 a.m., eventually parking outside the motel room where Lawrence was supposed to meet the other persons. (*Id.,* pp. 154-58, 173-74). At some point, Lawrence opened his car door and moments later, a masked man with a "shiny" revolver appeared at his door, while Davis thought she observed a second man running toward her side of the car. Davis locked her door and dove to the floor while Lawrence drove away. Lawrence was shot in the side and mortally wounded. When Lawrence began losing consciousness from the wound, Davis jumped into his lap and continued driving, fearing they were being chased. (*Id.,* pp. 158-63; 174-77).

Davis ultimately stopped and ran from the car. Davis called 911 and falsely reported that she had witnessed the shooting while she was walking down the street. Davis hid in some bushes. Police and ambulance crews subsequently arrived and Davis came out of hiding, pretending to be only a bystander. Davis got a ride home and was later called by police who told her that Lawrence had died. Davis hung up on the police. When later confronted by a detective, Davis admitted that she had been with Lawrence when he was shot. (*Id.,* pp. 164-67, 178-79).

Maria Bartee, a friend of the victim's, testified that she met Madge Matthews while they were incarcerated together in the Muskegon County Jail, after petitioner had been

arrested on unrelated charges. Petitioner initially denied any involvement in the shooting, but asked "what could they do if she made a phone call." (Tr. 3/9/11, pp. 33-34). Bartee and petitioner were later watching a television news report which indicated that a woman was about to be charged in connection with the shooting. Petitioner informed Bartee that she was this woman. (*Id.,* pp. 36-37). Bartee claimed that the next day, petitioner informed her that one of her co-defendants, whom she identified only as "Black," had offered her cocaine to call "Tookie" and lure him to a hotel so Black and another man identified as "B.G." could "take [Tookie's] stuff, money or whatever he had." (*Id.*, pp. 37-38; 41). According to Bartee, petitioner admitted making a call and in some of their conversations, described Black and B.G. approach the victim's car at the motel, after which Black got "jittery" and shot the victim. Petitioner told Bartee that no one was supposed to get hurt, only money and drugs was supposed to be taken according to the plan. Petitioner, however, admitted to Bartee that Black and B.G. had guns and masks. (*Id.,* pp. 37-38; 41-43). Bartee claimed that in some of her statements, petitioner indicated that she saw the robbery and then the chase of the victim and the woman as they tried to flee in the victim's car. But in other conversations, petitioner denied seeing anything and claimed that she was at home during the shooting. (*Id.*, pp. 44-47).

During the investigation into the shooting, petitioner accompanied officers to the police station, where she was eventually detained on an unrelated parole matter. In an initial statement to the police, petitioner indicated that on the night of August 22, 2010, she had been at Rowan Park, a short distance from where she lived, where she ran into George Freeman. Mr. Freeman accompanied petitioner back to her place, where she made him a meal. Petitioner and Freeman then walked to some apartments around the

3

corner from the park, where they met with man named Marshal and drank vodka. Petitioner indicated that she and Freeman walked to a market or gas station near her home, after which she went to her apartment and went to bed at around 2 a.m. (Prosecutor's Exhibit # 33). Petitioner heard about the shooting the next day. Petitioner denied any involvement in the shooting, and did not know "Black", "B.G.", or Lawrence. *Id.*

At trial, the prosecution called George Freeman, who was questioned by the prosecution primarily about what he had told the police regarding his whereabouts the night before and the morning of the shooting. (Tr. 3/9/11, pp. 79-81).

Muskegon Heights Police Officer Joseph Mahan was called to the stand to testify to what Freeman had told him when questioned about his whereabouts on the morning of the shooting. Freeman told Officer Mahan that at about 10 p.m. the night before the shooting, he had gone to Marshal's without petitioner, where he eventually went to sleep, and that he did not know whether petitioner was at that apartment that night. When Freeman was informed that petitioner had claimed she was with Freeman the morning of the shooting and that he had walked her home at about 2 a.m., Freeman replied that if he walked petitioner home, it would have been at 10 p.m. rather than 2 a.m. (*Id.,* pp. 83-85).

Darcee Young testified that she met petitioner at the Huron Valley Correctional Facility, where petitioner had been incarcerated on an unrelated parole violation. Young testified that she had known the victim from the Muskegon area. When she found out that petitioner was from Muskegon Heights, she asked petitioner what she knew about the victim's death. Petitioner initially denied knowing anything about the incident, but later told Young that she might be charged with murdering "Tookie" but indicated she was not guilty of that crime because she had merely placed a telephone call to get the victim to come to

4

the motel so others could rob him. (*Id.,* pp. 149-53; 163-165).

Petitioner testified on her own behalf and denied any involvement in the death of the victim. Petitioner did not make any phone calls to the victim the night of his death and did not know him or any of the alleged participants in the shooting or attempted robbery. (*Id.,* pp. 204-06).

Petitioner's conviction was affirmed on appeal. *People v. Matthews,* No. 304215 (Mich.Ct.App. October 23, 2012); *lv. Den.* 493 Mich. 969; 829 N.W. 2d 214 (2013).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Ms. Matthews is entitled to a new trial where the trial court abused its discretion in denying Ms. Matthews' request for substitute appointed counsel.

II. Reversal of the felony murder conviction is required where the prosecution failed to prove Ms. Matthews acted with malice, an essential element of felony murder.

III. The court of appeals erred in holding that extrinsic evidence of the out-of-court statements of George Freeman was properly admitted or that Ms. Matthews suffered no prejudice as a consequence.

IV. The court of appeals erred in holding that prosecutorial misconduct in closing argument did not deprive Ms. Matthews of her due process right to a fair trial, thereby requiring reversal.

V. Alternatively, defense trial counsel rendered constitutionally ineffective assistance of in failing to object to the improper admission of George Freeman's prior police statements at trial, and the prosecutor's improper use of them as substantive evidence of Ms. Matthews' guilt in closing argument.

VI. Ms. Matthews is entitled to a new trial under *Brady v. Maryland* and based on newly discovered evidence revealing that the prosecution's key eyewitnesses was convicted of a crime of dishonesty. Alternatively, this court should remand the matter to the trial court for a hearing on the newly discovered evidence.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

**A. Claim # 1. The trial court judge did not abuse his discretion in denying petitioner's motion to substitute appointed counsel.**

Petitioner first claims that the trial court judge erred in denying her motion to substitute appointed counsel which she made about one month prior to trial without making a specific inquiry into her complaints about her trial counsel. In her motion for substitution, petitioner claimed that trial counsel failed to move to have her trial severed from her co-defendants, failed to file a motion to dismiss on procedural grounds, failed to file a directed verdict of acquittal, told petitioner that the filing of these motions would be frivolous, and failed to ask petitioner her side of the story.

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993)(*citing Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id. (quoting Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)(*quoting Caplin & Drysdale,* 491 U.S. at 624-25). However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F. 3d at 1348 *(citing to Wheat v. United States,* 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel

of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F. 2d 275, 280 (6th Cir. 1985).

In reviewing a motion for substitution of counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 132 S. Ct. 1276, 1287 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.*

Petitioner primarily claims that the trial court judge abused his discretion in denying her motion for the substitution of counsel without making an adequate inquiry into her complaints against counsel. Although all of the federal circuit courts agree that a court "cannot properly resolve substitution motions without probing why a defendant wants a new lawyer[.]", *Martel,* 132 S. Ct. at 1288, the Supreme Court in *Martel* did not require, as a matter of federal constitutional law, that a trial court must engage in an inquiry with a criminal defendant concerning the nature of his or her complaints against counsel before denying a motion for substitution. Indeed, the Supreme Court in *Martel* held that a federal district court did not abuse its discretion in denying a habeas petitioner's motion for substitution of counsel without first conducting an inquiry into the nature of his complaints, where the motion was untimely and the court was ready to render a decision in that case. *Id.* at 1288-89. In point of fact, there is no clearly established federal law from the Supreme Court requiring an inquiry into the nature of a defendant's dissatisfaction with

8

his or her counsel prior to denying a motion for substitution of counsel. *See James v. Brigano*, 470 F. 3d 636, 643 (6th Cir. 2006)(reversing a grant of relief because the inquiry requirement was not clearly established Federal law). Thus, in the absence of a showing that a habeas petitioner received the ineffective assistance of counsel at trial, a state trial judge's failure to inquire into a habeas petitioner's complaints against his or her counsel before denying a motion for substitution of counsel would not entitle the petitioner to habeas relief. *See Peterson v. Smith,* 510 Fed. Appx. 356, 366-67 (6th Cir. 2013); *cert. den.* 134 S.Ct. 91 (2013).

Petitioner does not show, let alone allege, that she was denied the effective assistance of counsel at trial. A review of the trial court record establishes that trial counsel vigorously represented petitioner at trial. Because petitioner received the effective assistance of trial counsel, the denial of her motion for substitute counsel did not deprive her of her Sixth Amendment rights. *See U.S. v. Vasquez*, 560 F. 3d 461, 468 (6th Cir. 2009); *See also Ray v. Curtis,* 21 Fed. Appx. 333, 335 (6th Cir. 2001). Petitioner is not entitled to habeas relief on her first claim.

> **B. Claim # 2. There was sufficient evidence of malice to support petitioner's conviction for first-degree felony murder as an aider and abettor.**

Petitioner next contends that there was insufficient evidence of malice presented to convict her of first-degree felony murder under an aiding and abetting theory.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).

9

But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of

> death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
> (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F.3d 780, 789 (6th Cir. 2003)(citing *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

The Michigan Supreme Court has indicated that: "[A] jury can properly infer malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm." *People v. Aaron*, 409 Mich. 672, 729; 299 N.W.2d 304 (1980); *See also Carines,* 460 Mich. at 759 (internal citation omitted). "Malice may also be inferred from the use of a deadly weapon." *Carines,* 460 Mich. at 759.

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing M.C.L.A. 750.529; *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W. 2d 869 (1993)).

Under Michigan law, a conspiracy is defined as "a mutual agreement or understanding, express or implied, between two or more persons to a commit a criminal act." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004)(*quoting People v. Carter*, 415 Mich. 558, 567; 330 N.W.2d 314 (1982)). "[A] two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." *Carter*, 415 Mich. at 568.

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

11

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007)(citing *Carines*, 460 Mich. at 757-58).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(citing *People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636, 642 (1999)).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that the petitioner possessed the requisite malice required to support her conviction for first-degree felony murder as an aider and abettor. The evidence established that petitioner actively participated in an attempted armed robbery while knowing that her co-defendants were armed with guns.

A number of cases have held that a defendant's participation in an armed robbery, while either he or his co-defendants were armed with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily injury could occur, to support a finding that the defendant acted with malice aforethought, so as to support a conviction for felony-murder on an aiding and abetting theory. *See Hill v. Hofbauer,* 337 F.3d 706, 719-20 (6th Cir. 2003)(intent for felony murder "can be inferred from the aider and abettor's

knowledge that his cohort possesses a weapon."). *See also People v. Carines,* 460 Mich. at 759-60; *Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998)*; People v. Turner,* 213 Mich. App. 558, 572-73; 540 N. W. 2d 728 (1995)*;overruled in part on other grounds People v. Mass,* 464 Mich. 615; 628 N.W. 2d 540 (2001); *People v. Hart*, 161 Mich. App. 630, 635; 411 N.W. 2d 803 (1987); *Meade v. Lavigne ,* 265 F. Supp. 2d at 858-59. When viewed in a light most favorable to the prosecution, the evidence established that petitioner acted with the requisite malice aforethought so as to support her conviction for first-degree felony murder. Petitioner is not entitled to habeas relief on her second claim.

### C. Claims ## 3 and 4. Petitioner is not entitled to habeas relief on her improper impeachment evidence/prosecutorial misconduct claims.

The Court will discuss petitioner's third and fourth claims together because they are interrelated.

In her third claim, petitioner argues that the trial court improperly allowed extrinsic evidence of George Freeman's prior inconsistent statement to the police to be admitted into evidence, in violation of M.R.E. 613. In her fourth claim, petitioner alleges that the prosecutor used Freeman's prior inconsistent statement not merely to impeach her credibility but as substantive evidence of petitioner's guilt.

Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988); *Coy v. Renico,* 414 F. Supp. 2d 744, 756 (E.D. Mich. 2006). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to

deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F. 3d 363, 370 (6th Cir. 1994).

Under Michigan law, evidence of a witness' prior inconsistent statement may be admitted to impeach a witness even though the statement tends directly to inculpate the defendant. *Cathron v. Jones,* 190 F. Supp. 2d 990, 999 (E.D. Mich. 2002)(citing *People v. Kilbourn*, 454 Mich. 677, 682; 563 N.W.2d 669 (1997)); See also M.R.E. 613. Any claim involving the improper admission of Mr. Freeman's prior inconsistent statement is not cognizable in a federal habeas corpus proceeding. *See e.g. Bolton v. Nelson,* 426 F. 2d 807, 809 (9th Cir. 1970)(whether procedure followed by state court in permitting use of prior inconsistent statement was in violation of state decisional rule was not matter for federal district court to decide, on petition for habeas corpus); *See also Roland v. Mintzes,* 554 F. Supp. 881, 890 (E.D. Mich. 1983)(alleged misapplication of state law in impeachment by prosecutor of petitioner's accomplice with prior inconsistent statements was not cognizable in federal habeas corpus proceedings).

In her fourth claim, petitioner claims that the prosecutor committed misconduct by using Freeman's prior inconsistent statement as substantive evidence of petitioner's guilt and not merely as impeachment evidence.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d at 1355-56.

In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

The use of a witness' prior inconsistent statement as substantive evidence, and not merely for impeachment purposes, is not an error of constitutional dimension. *See Isaac v. United States,* 431 F. 2d 11, 15 (9th Cir. 1970). In the present case, any possible use of Freeman's prior inconsistent statement by the prosecutor as substantive evidence did not render petitioner's trial fundamentally unfair, in light of the trial court's instruction to the jury that the lawyers' statements and arguments were not evidence. (Tr. 3/10/11, pp. 79-80). *See Adams v. Holland*, 168 Fed. Appx. 17, 20 (6th Cir. 2005). Simply put, "[T]he prosecutor's use of the statement in argument did not transmute the statement's evidentiary use from impeachment to substantive evidence of guilt." *Id.* at 21. Petitioner is not entitled to habeas relief on her fourth claim.

**D. Claim # 5. Petitioner was not denied the effective assistance of trial counsel.**

Petitioner next contends that she was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth

Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Petitioner argues that trial counsel was ineffective for failing to object to the prosecutor's use of Freeman's prior inconsistent statement as substantive evidence. Petitioner also argues that trial counsel was ineffective for failing to request a cautionary instruction to prevent the jury from using Freeman's prior inconsistent statement as substantive evidence and not merely for impeachment.

As the Michigan Court of Appeals noted in rejecting petitioner's claim involving counsel's failure to seek a limiting instruction, petitioner's conviction was likely the result of the testimony from Bartee, Davis, and Young as opposed to any inconsistency in Freeman's statements regarding the night in question. *Matthews,* Slip. Op. at * 7. Freeman, in fact, did not incriminate petitioner in the murder or attempted robbery, either in his prior statements to the police, or in his trial testimony. There is no indication that Mr. Freeman's prior inconsistent statement to the police was used to establish the substantive elements of the crimes for which petitioner was convicted. Because there is no indication that the prosecutor used Mr. Freeman's prior inconsistent statement as

16

substantive evidence, the Michigan Court of Appeals' rejection of petitioner's ineffective assistance claim, arising from trial counsel's failure to either object to the prosecutor's closing argument or to proffer a limiting instruction on the proper use of prior inconsistent statements, was not an unreasonable application of *Strickland. See e.g. Cyars v. Hofbauer,* 383 F. 3d 485, 491-93 (6th Cir. 2004). Petitioner is not entitled to relief on his fifth claim.

### E. Claim # 6. Petitioner is not entitled to habeas relief on his *Brady* claim.

Petitioner finally claims that she is entitled to a new trial because the prosecutor failed to reveal until after she had been convicted that Dawn Davis had been convicted in 2006 of the misdemeanor crime of providing false information to a police officer. Petitioner only learned about Davis' prior conviction during the pendency of her appeal. Petitioner filed a motion to remand to the trial court, which the Michigan Court of Appeals denied. *People v. Matthews,* No. 304215 (Mich.Ct.App. August 20, 2012).

As an initial matter, this Court notes that the denial of petitioner's motion to remand by the Michigan Court of Appeals would be considered an adjudication on the merits, for purposes of the AEDPA's deferential standard of review. *See Nali v. Phillips,* 681 F. 3d 837, 852 (6th Cir. 2012).

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is

exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The Sixth Circuit has noted that "'where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material [under *Brady*].'" *Byrd v. Collins*, 209 F.3d 486, 518 (6th Cir. 2000)(quoting *United States v. Avellino*, 136 F.3d 249, 257 (2nd Cir. 1998)); *See also Brooks v. Tenn.* 626 F. 3d 878, 894 (6th Cir. 2010)(where a prosecution witness had been "effectively impeached at trial," evidence which may have provided "additional reasons not to credit his testimony.... would have been cumulative to the evidence already in the record.").

Petitioner is not entitled to habeas relief on her claim. Davis's 2006 conviction did not establish petitioner's innocence but could have been used at most only to impeach Davis's credibility. Davis, however, was impeached with the fact that she took off and hid after the shooting and acted like a mere bystander when the police arrived. Davis admitted that when she called 911, she falsely told them that she had witnessed the shooting while walking down the street. Davis also admitted that when the police notified her that Lawrence was dead, she hung up on the officer and did not disclose her knowledge of the crime. Davis only subsequently admitted to being with the victim when he was shot. Because the 2006 conviction would have been cumulative to impeachment evidence presented at petitioner's trial, she is not entitled to habeas relief on this claim.

Petitioner would also not be entitled to habeas relief on the ground that she was

denied a new trial based on this newly discovered evidence. A claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him or her a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. *Hence v. Smith,* 37 F. Supp. 2d 970, 980 (E.D. Mich. 1999)(*citing to J.C. Dickey v. Dutton*, 595 F. Supp. 1, 2 (M.D.Tenn. 1983)). In any event, new evidence which is merely cumulative or impeaching is not an adequate basis for a new trial. *Mesarosh v. United States*, 352 U.S. 1, 9 (1956); *United States v. Davis*, 15 F.3d 526, 532 (6th Cir. 1994). Petitioner is not entitled to habeas relief on her sixth claim.

## IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of

appealability because she has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: August 22, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 22, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135